UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| Kasey K., | No. 22-cv-2029 (WMW/DLM) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| Kilolo Kijakazi,<br>Acting Commissioner<br>of Social Security, | |
| Defendant. | |

---

Pursuant to 42 U.S.C. § 405(g), Plaintiff Kasey K. seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her application for benefits. This matter is before the Court on the parties' cross-motions for summary judgment. (Docs. 17–19 (Plaintiff's motion and supporting pleadings), 26–27 (Commissioner's motion and supporting pleadings), 30 (Plaintiff's reply memorandum).) The case has been referred to the undersigned magistrate judge for a Report and Recommendation pursuant to 28 U.S.C. § 636 and District of Minnesota Local Rule 72.1. For the reasons which follow, the Court recommends that Plaintiff's Motion be denied, and that Defendant's Motion be granted.

# BACKGROUND

On June 22, 2018, Kasey K. applied for disability insurance benefits ("DIB") and Supplemental Security Income ("SSI"), alleging that she had been disabled since January May 15, 2016. (Tr.[1] at 16, 263–71.) The Social Security Administration ("SSA") denied her initial claim and her request for reconsideration. (Tr. at 16, 146–50, 155–61.) Plaintiff then timely requested a hearing before an Administrative Law Judge ("ALJ"), and the ALJ held a hearing on the matter on October 14, 2021. (Tr. at 43–70.) Plaintiff was represented by counsel, appeared at the hearing, and testified on her own behalf. (*Id.*)

At the hearing, Plaintiff's attorney noted several of her physical and mental impairments, but focused on the residual effects of a subarachnoid (brain) hemorrhage that Plaintiff suffered in November of 2016. (Tr. at 49.) According to Plaintiff's attorney, the most significant effect from Plaintiff's hemorrhage was debilitating headaches, "and it would appear the headaches would be the primary issue today that would prevent the claimant from work." (*Id.*)

A vocational expert also testified regarding whether there were jobs in the national economy that were suitable for a hypothetical person with physical and mental limitations like Plaintiff's. (Tr. at 63–69.) As relevant to this review, the ALJ's hypothetical worker had the mental capacity to "perform sequential linear tasks, tasks avoiding having to do

---

[1] The Commissioner filed the consecutively paginated transcript of the administrative record on October 14, 2022. (Doc. 12.) For ease of reference, citations to the transcript will identify the page number listed on the lower right corner of the cited document rather than docket page number or exhibit number.

multitasking." (Tr. at 68.) Based on this and other limitations identified in the ALJ's hypothetical, the vocational expert opined that the hypothetical person could perform the unskilled jobs of mail clerk, routing clerk, and garment sorter. (Tr. at 68–69.) The ALJ then asked the vocational expert about how often a person in the above unskilled positions could be absent from work (defined as arriving late, leaving early, or missing an entire day), to which the vocational expert replied that "the acceptable tolerance is approximately eight to nine days per year." (Tr. at 69.)

Although given the opportunity to examine the vocational expert, Plaintiff's attorney declined. (*Id.*) Instead, Plaintiff's attorney directed the ALJ to the vocational expert's earlier testimony that being absent more than one day per month from work would be intolerable for the jobs Plaintiff could perform, stating that "where this case lies is how often is [Plaintiff] having these headaches" which would cause her to be absent from the workplace. (*Id.*)

On November 16, 2021, the Commissioner sent Plaintiff notice of an unfavorable decision. (Tr. at 13–42.) The ALJ recognized that Plaintiff suffered from several severe impairments, including degenerative disc disease, inflammatory arthritis, subarachnoid hemorrhage (and associated migraines), and cognitive disorder-not otherwise specified. (Tr. at 19.) The ALJ identified a number of impairments that he determined were not severe as well, because they did not result in significant, work-related functional limitations. (Tr. at 20.) These included obesity, asthma, endometriosis, hypothyroidism, and a history of gastric bypass surgery. (*Id.*) While each of these impairments was characterized as not

severe, the ALJ nonetheless considered all of them in determining Plaintiff's residual functional capacity ("RFC") to work.

Specifically as it relates to Plaintiff's mental limitations,[2] the ALJ found that Plaintiff was mildly impaired in her ability to interact with others, and in her ability to adapt or manage herself. (Tr. at 22.) The ALJ further found that Plaintiff was moderately impaired in her ability remember or apply information, as well as her ability to concentrate, persist, or maintain pace. (Tr. at 21–22.) According to the ALJ, he crafted an RFC tailored to Plaintiff's moderate mental impairments by limiting her work to (among other things) "sequential linear tasks." (Tr. at 22–23.) The RFC did not impose any limitations based on Plaintiff's mild mental impairments. (Tr. at 22–34.)

Ultimately, despite Plaintiff's physical and mental impairments, the ALJ concluded Plaintiff did not qualify for benefits. (Tr. at 36.) First, the ALJ determined that Plaintiff retained the RFC to perform light exertional work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), provided there were a number of additional physical and mental limitations. (Tr. at 23.) These included only occasional climbing of ramps and stairs;

---

[2] In evaluating the limitations a claimant's mental impairments impose, an ALJ is directed to consider four broad functional areas: (1) the claimant's ability to understand, remember, or apply information; (2) the claimant's ability to interact with others; (3) the claimant's ability to concentrate, persist, or maintain pace; and (4) the claimant's ability to adapt or manage oneself. 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3). The ALJ is required to rate the degree of a claimant's impairment in each functional area based on a five-point scale: none, mild, moderate, marked, and extreme. 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(4); *see also* SSA POMS DI 34001.032(F)(2), https://secure.ssa.gov/poms.nsf/lnx/0434001032 (last visited July 10, 2023) (describing the distinctions between each point on the severity scale in the Social Security Administration Program Operations Manual System ("POMS")).

occasional crawling; frequent balancing, stooping, kneeling, and crouching; never climbing ladders, ropes, or scaffolding; no concentrated exposure to extreme cold, heat, vibration, or hazards; and being restricted to only performing sequential linear tasks. (*Id.*) With these limitations, the ALJ credited the testimony of the vocational expert that there were at least three representative occupations which were listed in the Dictionary of Occupational Titles ("DOT") that a person with similar limitations to Plaintiff could perform: mail clerk (DOT 209.687-026); routing clerk (DOT 222.687-022); and garment sorter (DOT 222.687-014). (Tr. at 36.) Because there were sufficient jobs available in the national economy for someone with Plaintiff's limitations, the ALJ found her not disabled under the evaluative process outlined in 20 C.F.R. §§ 404.1520 and 416.920. (Tr. at 36.) Plaintiff properly exhausted her administrative remedies, such that the ALJ's decision is the final decision of the Commissioner, subject to this Court's review.

## ANALYSIS

This Court reviews an ALJ's denial-of-benefits decision to determine whether it is supported by substantial evidence in the record as a whole, and whether the decision is infected by legal error. 42 U.S.C. § 405(g); *Austin v. Kijakazi*, 52 F.4th 723, 728 (8th Cir. 2022). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal quotations omitted); *see also Nash v. Comm'r, Soc. Sec. Admin*, 907 F.3d 1086, 1089 (8th Cir. 2018) (characterizing "substantial evidence" as "less than a preponderance, but enough that a reasonable mind would find it adequate to support the Commissioner's conclusions"). Courts reviewing ALJ decisions must look to the entire

administrative record to ascertain whether it contains sufficient evidence to support (or detract from, as the case may be) the ALJ's conclusion. *Grindley v. Kijakazi*, 9 F.4th 622, 627 (8th Cir. 2021). Where substantial evidence supports the ALJ's decision, the Court will not reverse, even if substantial evidence also supports a contrary outcome. *Nash*, 907 F.3d at 1089.

Plaintiff does not contest that the ALJ followed the five-step sequential process laid out in 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4)[3] for evaluating SSI and DIB claims. Rather, she primarily takes issue with the ALJ's use of the phrase "sequential linear tasks" as a limitation within the RFC. According to Plaintiff, restricting her RFC to performance of "sequential linear tasks" is so amorphous that it did virtually nothing to account for moderate mental impairments. Further, Plaintiff continues, the ALJ's phraseology was so "unreviewably vague" and ambiguous that it leaves this Court unable to evaluate whether the RFC accounted for Plaintiff's impairments, and left the vocational expert hopelessly confused about what limitations were being imposed.

---

[3] Step one of this process involves determining whether a claimant is engaged in substantial gainful activity. If not, the ALJ must next decide (in step two) whether the claimant's impairments are severe, and of a duration of least 12 continuous months. At step three, the ALJ determines whether the claimant's impairments are severe enough to equal a listed impairment under appendix 1 to subpart P of part 404. If so, the claimant is considered disabled without further inquiry. If not, the ALJ must determine the claimant's RFC, and determine (at step four) whether the claimant can still do their past work given their limitations. Finally, if the ALJ concludes a claimant cannot perform their prior work, step five requires the ALJ to determine whether they can do other work considering their RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(i–v), (d–e); 416.920(a)(4)(i–v), (d–e).

The Court respectfully disagrees with Plaintiff's contentions. "Sequential linear tasks" means what it says: assignments (that is, tasks) which are singular (a different way to say linear) and ordered (put another way, sequential). Were there any doubt about the ALJ's meaning, during the hearing he further described to the vocational expert what he meant by sequential linear tasks: "tasks avoiding having to do with multitasking." (Tr. at 68.) No error attached to the ALJ's use of the phrase "sequential linear tasks" in Plaintiff's RFC, and substantial evidence supports the limitation imposed: it was reasonable for the ALJ to conclude that doing things in an ordered fashion, one step at a time and one task at a time, was a necessary restriction given Plaintiff's moderate limitation in understanding, remembering, and applying information as well as her moderate limitation in concentrating, persisting, or maintaining pace. *Accord Scott v. Berryhill*, 855 F.3d 853, 858 (8th Cir. 2017) (RFC hypothetical need not frame claimant's impairments in specific diagnostic terms but should capture the "concrete consequences" of the person's limitations). Indeed, despite the challenge Plaintiff now raises to the ALJ's decision for using the phrase "sequential linear tasks," her counsel sought no clarification or expansion of the phrase at her hearing before the ALJ, and the vocational expert expressed no confusion about its meaning. Plaintiff's current preference for a more precisely-described limitation would impose a standard of review that is unsupported by the law. *See Galloway v. Kijakazi*, 46 F.4th 686, 690 (8th Cir. 2022).

A closer question is whether the ALJ erred in not imposing any limitations related to Plaintiff's mild impairments in her ability to interact with others and to adapt or manage herself. According to Plaintiff, the "complete omission" of any limitation related to her

7

mild mental impairments in the RFC necessitates remand. (Doc. 19 at 10–11 (citing *Mark E. v. Kijakazi*, No. 20-cv-2047 (PAM/JFD), 2021 WL 6066260, at *10 (D. Minn. Dec. 7, 2021), *R. & R. adopted sub nom. Mark J. E. v. Kijakazi*, No. 20-cv-2047 (PAM/JFD), 2021 WL 6063631 (D. Minn. Dec. 22, 2021).) It is true that an ALJ is required to consider the entirety of a person's impairments—including those that are not severe—in determining the person's RFC. 20 C.F.R. §§ 404.1545(a)(1) & (2), 416.945(a)(1) & (2). But Plaintiff wants more than consideration: she essentially argues that the ALJ was required to *impose* RFC limitations once the ALJ found that Plaintiff had mild mental impairments. The law does not support this proposition. An ALJ determines the scope of a person's mental impairments at steps two and three of the sequential process. 20 C.F.R. §§ 404.1520(a)(4)(ii) & (iii), 416.920(a)(4)(ii) & (iii); *Vicky R. v. Saul*, No. 19-cv-2530 (ADM/ECW), 2021 WL 536297, at *12 (D. Minn. Jan. 28, 2021), *R. & R. adopted*, 2021 WL 533685 (D. Minn. Feb. 12, 2021).

But determining the RFC at step four is different, requiring a more thorough—and distinct—analysis from the cabined determination of the "level" of a person's mental impairments in administratively-created fields. "[T]he different steps serve distinct purposes, the degrees of precision required at each step differ, and our deferential standard of review precludes us from labeling findings as inconsistent if they can be harmonized." *Chismarich v. Berryhill*, 888 F.3d 978, 980 (8th Cir. 2018) (per curiam) (citing *Lacroix v. Barnhart*, 465 F.3d 881, 888 n.3 (8th Cir. 2006) (rejecting argument that finding of mental impairment at step two required the imposition of related limitations in the RFC at step

8

four because "[e]ach step in the disability determination entails a separate analysis and legal standard")).

Of course, error attaches where an RFC determination wholly ignores a person's mental impairments. *Vicky R.*, 2021 WL 536297, at *14; *Mark E.*, 2021 WL 6066260, at *10–11; *Charles C. v. Kijakazi*, No. 22-cv-2054 (JWB/DJF), 2023 WL 4215310, at *8–9 (D. Minn. May 22, 2023), *R. & R. adopted*, 2023 WL 4202850 (D. Minn. June 27, 2023). This is so because the analytical void deprives the Court of the opportunity for meaningful judicial review, and also because it may result in posing hypothetical questions to vocational experts that are not consistent with a claimant's impairments. *Vicky R.*, 2021 WL 536297, at *14; *Mark E.*, 2021 WL 6066260, at *10–11; *Charles C.*, 2023 WL 4215310, at *8–9. But that is not the case here. In determining Plaintiff's RFC, the ALJ specifically found that "this record does not support a limit on interacting with others." (Tr. at 33.) The RFC determination with respect to Plaintiff's ability to adapt or manage herself was less direct, but nonetheless identified a number of activities that Plaintiff performed (hygiene, grooming, chores, hosting holiday meals, driving, managing finances and medications, and traveling out of state) which were consistent with imposing no limitation. (Tr. at 22, 31.) Perhaps a better practice would have been for the ALJ to directly address the issue of whether Plaintiff's impairments in her ability to adapt or manage herself merited any limitation, but on this record the Court cannot say that the ALJ's decision is not supported by substantial evidence. *Diane M. W. v. Kijakazi*, No. 20-cv-2651 (SRN/ECW), 2022 WL 4277731, at *4 (D. Minn. Sept. 22, 2022) ("[T]he Court does not substitute its own views for those of the Commissioner, and if substantial evidence supports

9

the Commissioner's judgment, the Court must affirm even if substantial evidence exists in the record that would have supported a contrary outcome." (citation and internal quotation marks omitted).) It is not necessary for an ALJ to use magic words where, as here, the record as a whole demonstrates the ALJ understood a claimant's mental impairments and imposed RFC limitations (or as the case may be, declined to impose limitations) related to those impairments. *Cf. Galloway*, 46 F.4th at 690 ("[O]ur deferential standard of review precludes us from labeling findings as inconsistent if they can be harmonized.") (quoting *Chismarich*, 888 F.3d at 980).

## RECOMMENDATION

Based on the above findings, as well as the files, records, and proceedings above, **IT IS RECOMMENDED** that:

1. Plaintiff's Motion for Summary Judgment (Doc. 17) be **DENIED**; and

2. Defendant's Motion for Summary Judgment (Doc. 26) be **GRANTED.**


DATED: July 13, 2023    *s/Douglas L. Micko*
DOUGLAS L. MICKO
United States Magistrate Judge


## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals. Under Local Rule 72.2(b)(1), "a party may file and serve specific written

objections to a magistrate judge's proposed finding and recommendations within 14 days after being served with a copy" of the Report and Recommendation.

A party may respond to those objections within 14 days after being served a copy of the objections. *See* Local Rule 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in Local Rule 72.2(c).